IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KELVIN GRAY                                                                                            PLAINTIFF

v.                                     Civil No. 4:16-cv-04021

SERGEANT McCLURE; SERGEANT
D. FLOYD; SHERIFF RON
STOVALL, WARDEN M. BRAZELL;
SERGEANT M. MOON; and
L. MAULDIN, Kitchen Supervisor                                  DEFENDANTS

**MEMORANDUM OPINION**

      This is a civil rights action filed *pro se* by Plaintiff, Kelvin Gray, under 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendants. (ECF No. 26). Plaintiff filed a Response. (ECF No. 34). Defendants filed a Reply. (ECF No. 37). The Court finds this matter ripe for consideration.

**I. BACKGROUND**

      Plaintiff filed his Complaint on March 4, 2016. (ECF No. 1). Plaintiff is no longer incarcerated and now resides in Baton Rouge, Louisiana. Plaintiff originally indicated he was suing Defendants Sergeant McClure, Sergeant D. Floyd, Sheriff Ron Stovall, Warden M. Brazell, Sergeant M. Moon and L. Mauldin[1] only in their official capacities. On November 10, 2016, Plaintiff filed a Supplement to his Complaint stating "I would like to change 'official capacity only' to 'Personal Capacity Only.'" (ECF No. 14). Plaintiff does not specify what damages he is seeking and instead states "Miller Co. needs to be reprimanded for the things they done to me. The time I spent there was very uncomfortable…I want the court to see how I felt during my stay in Miller Co., that it was very unpleasant." (ECF No. 1).

---
[1] On December 29, 2016, Defendants filed a suggestion of death pursuant to Federal Rule of Civil Procedure 25 as to Defendant Mauldin. Defendant Mauldin passed away on December 18, 2016. (ECF No. 20).

1

On November 17, 2015, Plaintiff was brought to the Miller County Detention Center ("MCDC") through the inmate 309 Program.[2] Plaintiff alleges his constitutional rights were violated when Defendant Floyd verbally threatened him on December 7, 2015. Two days later Plaintiff filed a grievance relating to the incident stating that Defendant Floyd called out to another inmate and "then threatens me, saying 'next time I tell you to do something, do it.' . . . I tried to tell him he didn't say Gray, he tells me to 'shut up', then he says 'the next time I'm going to do something to you and show you who I am.' I don't feel comfortable here with that threat being made twards [sic] me, retaliation I cant have!" (ECF No. 28-1, p. 6).

On December 30, 2015, Plaintiff was moved from the West Echo area of the MCDC to the Receiving and Discharge area where he remained until January 7, 2016. Plaintiff alleges he was moved to Receiving and Discharge and locked down because Defendant Mauldin, the kitchen supervisor for the MCDC, falsely claimed that he "cursed her out."[3] He claims that during this time he was only allowed to shower once, use the phone "maybe twice" and was not allowed to "come out for my hour reck or anything." (ECF No. 1). Plaintiff claims that on one occasion during this lock down "I was not fed last chow until 2 hours after they served they had me were none knew where I was." (ECF No. 1). Plaintiff also claims Defendant Mauldin "punished me by always putting me to clean the pots and pans every day, and serve the max end. Nobody wants to serve the max end. I/we got treated like slaves in the kitchen." (ECF No. 1).

On February 15, 2016, Plaintiff left his kitchen shift early to get ready for a visit with his wife and did not report back for his lunch and dinner shifts.[4] Later that day Defendant Moon confronted Plaintiff about his failure to report for work and Plaintiff became argumentative. (ECF

---

[2] Arkansas Act 309 is a state program that places inmates who meet certain criteria in local jails to be used as labor in order to reduce the number of inmates in state prisons.
[3] It is not clear from the record when Plaintiff began working for Defendant Mauldin in the MCDC kitchen.
[4] It is not clear from the record when Plaintiff returned to work in the MCDC kitchen.

No. 28-1, p. 12). Afterwards, Plaintiff went to Defendant Moon's office and made a phone call during which he discussed his encounter with Defendant Moon. Defendant Moon overheard the conversation and ordered Plaintiff to hang up the phone. Plaintiff refused several times before finally hanging up. Defendant Moon then spoke with Lieutenant Adams and they concluded that Plaintiff needed to be locked down for his disrespectful behavior. (ECF No. 28-1).

Plaintiff filed a grievance regarding this incident on February 15, 2016, stating "I went to use the phone at 1:30 to tell my wife about what the Sgt and Mcclure said to me, while on the phone Sgt Moon tells me to hang up the phone. He also tells me I cant use it nor go outside. He had no reason to interfere with me talking to my wife…I feel threatened here and that the officers are out to get me for any little thing that I do." (ECF No. 28-1, p. 7).

Plaintiff alleges that Defendants McClure and Moon moved him to lock down on February 15, 2016, without justification and denied him outside time and access to the phone up until he was transferred from the MCDC on February 24, 2016. As for Defendants Stovall and Brazell, Plaintiff alleges that they violated his constitutional rights when they failed to speak with him or respond to his complaints. Specifically Plaintiff states:

> "the Warden and Sherriff play the biggest role in here. No matter how many time you have complaints, nothing is never done by them. They dont come and talk to anyone about whats going on with them or how are the staff treating you. They want Whatever the Sgt(s) tell them, thats what they go by. I have not yet to talk to either one of them about none of my problems Ive been having since Ive been over here. From the first grievence [sic], to being lockdown, from the second grievence [sic] to being lockdown for nothing."

(ECF No. 1, p. 12).

The MCDC has an established grievance procedure for inmates to utilize when they believe their constitutional rights have been violated. (ECF No. 28-1, pgs. 16-17). It provides in part: "Unless evidently frivolous or groundless, every request or complaint shall be promptly dealt with

3

and replied to without undue delay." *Id.* Inmates are required to submit grievances in the form of a written statement promptly following an incident. Each grievance must specify the time, date, names of the detention staff members involved, and details of the incident including the names of any witnesses. All grievances are then forwarded from the receiving deputy to the supervisor and then to the Detention Administrator.

Defendants argue they are entitled to summary judgment because: 1) Plaintiff failed to exhaust his administrative remedies; 2) Plaintiff was afforded his rights to due process; 3) there is no constitutional violation for harassment or verbal threats; and 4) Defendants are entitled to qualified immunity. (ECF No. 26).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted); *see also Woodford v. Ngo*, 548 U.S. 831, 90 (2006) ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*."). "The level of detail necessary in a grievance to comply with the

5

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 599 U.S. at 218. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

There is no dispute that the MCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights. There is also no dispute that Plaintiff filed only two grievances. The first, filed on December 7, 2015, related to alleged verbal threats made against Plaintiff by Defendant Floyd. (ECF No. 28-1, p.6). The second grievance, filed on February 15, 2016, referenced Defendant Moon's actions the day he ordered Plaintiff to hang up the phone and allegedly interfered with Plaintiff's conversation with his wife. The second grievance also referenced Defendant McClure's actions in terminating Plaintiff's phone access and outside recreation. (ECF No. 28-1, p.7). Plaintiff claims in response to each of these grievances that he received a response stating "Non-grievable by the responder and therefore cannot be appealed/CLOSED". (ECF No. 34).

Giving Plaintiff the benefit of all reasonable inferences, the Court finds Plaintiff has exhausted his administrative remedies regarding the verbal threats made by Defendant Floyd on December 7, 2015, and his claims against Defendants Moon and McClure arising from the interruption of Plaintiff's telephone conversation with his wife and the termination of phone privileges and recreational time on February 15, 2016.

However, the record clearly demonstrates that Plaintiff did not submit any grievances relating to the following claims in this lawsuit: 1) claims against Defendant Mauldin relating to an alleged false allegation against him resulting in the lock down on December 30, 2015; 2) claim

of retaliation by Defendant Mauldin regarding certain kitchen work assignments; 3) claims against Defendants Stovall and Brazell for failure to respond to his complaints—either verbal or Plaintiff's two written grievances; 4) claims against Defendants McClure and Moon relating to the alleged lock down without justification from February 16, 2016, until February 24, 2016; and 5) condition of confinement claims during the December and February lock downs relating to the denial of access to a shower, phone usage, recreational time, and a late meal. The Court must now determine whether Plaintiff's failure to exhaust his administrative remedies on these claims may be excused.

The Eighth Circuit Court of Appeals has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff states in his Response to the Motion for Summary Judgment that Defendants failed to follow their own grievance procedures by "blocking/interfering with all attempts that he made to report such incidents that were made before they reached the appropriate officials." (ECF No. 34, p. 2).[5] However, Plaintiff only specifically addresses issues he had with the two grievances he filed asserting that MCDC personnel improperly marked them as "non-grievable" which in effect closed the grievance process down. Plaintiff does not address whether he attempted to submit any additional grievances relating to any other claims nor does he specify how and when anyone at the MCDC interfered with or prevented him from filing such grievances. It is clear from the record

---

[5] Plaintiff's Response is written, signed, dated, and states "under penalty of perjury" that the information within is true and correct. (ECF No. 34). Consequently, the Court will treat Plaintiff's Response as an unsworn declaration which serves as an alternative to a formally attested affidavit. *See* 28 U.S.C. § 1746; *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016).

7

that Plaintiff understands and is familiar with the MCDC's grievance process and its various steps as he submitted two separate written grievances. There is no evidence to suggest that Plaintiff attempted to submit any written grievances as required by the MCDC grievance process other than the two he submitted on December 7, 2015 and February 15, 2016.

Accordingly, all of Plaintiff's claims against Defendants Mauldin,[6] Stovall, and Brazell are barred as a matter of law for failure to exhaust his administrative remedies. In addition, Plaintiff's claims against Moon and McClure relating to unjustified lock downs and conditions of confinement during the December and February lock downs regarding the alleged denial of access to a shower, phone usage, recreational time, and a late meal are also barred for failure to exhaust his administrative remedies.

This leaves the following claims for resolution by the Court: (1) Plaintiff's claims against Defendant Floyd for verbal threats made on December 7, 2015, and (2) the condition of confinement claims against Defendants Moon and McClure regarding the alleged lack of phone access and alleged denial of outside recreation on February 15, 2016.

**B. Verbal Threats**

Plaintiff claims his constitutional rights were violated on December 7, 2015, when Defendant Floyd threatened him "saying 'next time I tell you to do something, do it.'…'the next time Im going to do something to you and show you who I am.'" (ECF No. 28-1, p. 6). The Eighth Circuit has held that "verbal abuse is normally not a constitutional violation." *Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir. 2000) (citing *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985)); accord *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997) (generally, mere verbal threats made by a state actor do not constitute a § 1983 claim.). The Eighth Circuit has also

---

[6] Plaintiff's claims against Defendant Mauldin should also be dismissed because Plaintiff has not pursued his claims against Mauldin's estate. *See* Fed. R. Civ. Proc. 25.

8

held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience and amount to a severe invasion of personal security and autonomy. *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560 (8th Cir. 1988).

The Court finds Defendant Floyd's words that he would "do something to Plaintiff" if Plaintiff refused to follow his orders does not "shock the conscience and amount to a severe invasion of personal security." While Plaintiff may have felt uncomfortable as a result of Defendant Floyd's comments, his words do not rise to the level of a constitutional violation. *Wise,* 855 F.2d at 565 (minor discomfort and hurt feelings do not make a federal case). Accordingly, Plaintiff's claim relating to verbal threats made by Defendant Floyd fails as a matter of law.

**C. Conditions of Confinement**

Plaintiff claims Defendant Moon violated his constitutional rights on February 15, 2016, when he forced Plaintiff to end a phone conversation with his wife. He also alleges Defendants Moon and McClure violated his rights when they decided to terminate his access to a phone and outside recreation that same day. The Court construes this as a condition of confinement claim.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. However, courts are not concerned with *de minimis* levels of imposition on inmates. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979).

Plaintiff was having a telephone conversation with his wife when he was interrupted by Defendant Moon and ultimately forced to end the conversation. Defendants McClure and Moon claim Plaintiff was being disrespectful to them and as a result he was not allowed to use the phone for several hours on February 15, 2016, or go outside for his hour of recreation. Even construing the facts in the light most favorable to Plaintiff, he has neither shown his living conditions on February 15, 2016, denied him the minimal measure of life's necessities nor has he demonstrated the issues he complains of posed a substantial risk of serious harm to his health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The Court finds any discomfort Plaintiff may have suffered on February 15, 2016, to be *de minimis,* and as a result does not implicate the Constitution. *See Smith,* 87 F.3d at 268. Accordingly, Plaintiff's condition of confinement claims against Defendants McClure and Moon fail as a matter of law.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 26) is **GRANTED**. Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**. A Judgment consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 14th day of February, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge